EXHIBIT 16

**PRINCE GEORGE'S COUNTY OFFICE OF HUMAN RIGHTS**

| | | |
|---|---|---|
| CARL NELSON,<br><br>Complainant,<br><br>v.<br><br>CRANE SERVICE COMPANY, INC.,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | OHR Charge No.: OHR23-0306<br>EEOC Charge No.: 12H-2023-00011 |

---

**DECLARATION OF RICKEY MCGUIRE IN SUPPORT OF RESPONDENT'S POSITION STATEMENT**

1. I am over the age of eighteen (18) and have personal knowledge of the statements contained in this Declaration.

2. I am currently the Vice President/Safety Manager at Crane Service Company, Inc. ("CSC").

3. CSC's primary location is at 9310 D'Arcy Road Upper Marlboro, Maryland 20774 ("D'Arcy Road"). The D'Arcy Road "Yard" is a dispatch office and a mechanic and storage lot. The Yard is regularly filled with mechanics, oilers who are not on jobs, and, occasionally, operators and drivers. New operator apprentices are stationed in the Yard for a period of time, often several weeks, to gain exposure to and learn about cranes from the ground up in a controlled environment, allowing them to safely gain critical skills and knowledge before being sent out on jobs.

4. The majority of CSC's employees, including the members of CSC's management team, are members of unions, including the International Union of Operating Engineers Local 77 (the "Union"). There is a Union representative, Oscar Seravia (Hispanic), dispatched at the Yard.

5. Mr. Nelson was hired by CSC as an apprentice operator on December 19, 2022. He spent several weeks working in the Yard and then slowly began going out on jobs.

6. CSC is committed to providing a work environment free of harassment and does not tolerate harassment. Attached as **Exhibit A** is a true and accurate copy of the CSC Equal Employment Opportunity, Violence and Threats of Violence in the Work Place, and Harassment and Intimidation policies that were in place at the time Mr. Nelson was hired. CSC strictly follows these policies and takes its employees' concerns very seriously.

7. Prior to Mr. Nelson's complaint of a hostile work environment, there had been only one single instance in which an employee raised a concern in any way relating to race. In September 2022, Stanley McCombs (African American), a CSC driver, asked me if the company would conduct a sensitivity training. He told me that there was a lot of joking between employees regarding race and cultural differences, and that sometimes the joking went too far. To be clear, Mr. McCombs did not express concerns about a hostile work environment or of any harassment or discrimination targeted at him or at others.

8. In response, in November 2022, CSC implemented a new online anti-harassment training program, which all employees were required to – and did – complete. This was an online training program developed by Traliant, a company specializing in online employee training programs.

9. Despite Mr. Nelson's allegations in his Charge of Discrimination that, starting at the beginning of his employment with CSC, he complained on multiple occasions to his supervisor, CSC did not become aware of any concerns held by Mr. Nelson until February 3, 2023. I have spoken with Mr. Nelson's supervisor, Brent Loveless, and he vehemently denies that Mr. Nelson ever complained to him about a hostile work environment. I have also spoken with the Union representative dispatched at the Yard, Mr. Seravia, who denies that Mr. Nelson ever complained to him.

10. On February 3, 2023, Steve Faulkner, the Union's business representative, sent an email to Brian Mazzella (White), CSC's President, to inform Mr. Mazzella that Mr. Nelson had made a complaint to him of a hostile work environment.

11. Mr. Mazzella shared Mr. Faulkner's email with Lynn Perry (African American), a CSC consultant, and myself, at which point we immediately began an investigation into Mr. Nelson's allegations. Within hours of Mr. Mazzella's receipt of this email, Ms. Perry and I met with Mr. Nelson to discuss his complaint. Ms. Perry prepared investigative summary notes of our February 3, 2023 meeting with Mr. Nelson, which I have reviewed and which correctly summarize the discussion at the meeting. A copy of those notes is attached to Ms. Perry's Declaration.

12. At this February 3, 2023 meeting, Mr. Nelson alleged being subjected to a hostile work environment and personally threatened by two employees who had guns. Despite repeated requests, however, Mr. Nelson would not identify the employees about whom he was making allegations. Mr. Nelson showed us photographs of the two employees who had guns, but the photographs did not show their heads. Attached as **Exhibit B** are true and accurate copies of the photographs Mr. Nelson showed to us and which he provided to Mr. Faulkner, who provided

them to us. Mr. Nelson did ultimately identify two employees during our meeting - Brad Cannon (White), an operator, and Andre Gilliam (Black), a driver - who we ultimately learned during our investigation would often engage in racial banter with each other, typically initiated by Mr. Gilliam.

13. This was not only the first time that CSC learned of Mr. Nelson's concerns, but also the first time that CSC learned that employees were bringing firearms to work.

14. Because Mr. Nelson did not identify any individuals other than Mr. Cannon and Mr. Gilliam, Alyssa Privitera (White), CSC HR, and I decided to undertake a broad investigation, interviewing 23 CSC employees at D'Arcy Road.

15. During our investigation, we learned that there was inappropriate banter back and forth between employees – initiated by both African American and White employees – that sometimes involved racial slurs. We were pleased to learn, however, from Skip Ellison (White), a mechanic, and Kurt Specht (White), an operations manager, that things had improved since the online anti-harassment training.

16. In his interview, Mr. McCombs, for the first time, raised concerns regarding a specific individual, John Mutispaugh (White), an operator, alleging that Mr. Mutispaugh referred to him as a "black man," and Mr. McCombs did not like that.

17. After the investigation concluded, I spoke with each Mr. Mutispaugh, Mr. Cannon and Mr. Gilliam – the only three individuals to be specifically identified during the entire investigation – regarding their conduct and explained that any race-based name calling or jokes or banter were flatly prohibited and against CSC policy.

18. During our exhaustive investigation, Ms. Privitera and I were unable to corroborate Mr. Nelson's allegations that he was called any slurs or names or was being targeted

in any way. We did learn, however, that Mr. Nelson had suggested to Mr. McCombs that people were racist at work, but Mr. McCombs told him that he didn't think that was true. Mr. Ellison also commented on Mr. Nelson during his interview, stating that Mr. Nelson was "asking strange questions about black issues." Mr. Ellison said he was uncomfortable because it seemed like Mr. Nelson had "an agenda."

19. During the investigation, a few employees stated that they had seen guns at work, but we could not corroborate Mr. Nelson's allegations that he was threatened with a firearm by another employee, or that another employee brandished a gun at him.

20. Within a week of concluding the investigation, CSC drafted and rolled out a new Anti-Harassment Policy and new Weapon-Free Workplace Policy prohibiting weapons at work. Attached as **Exhibit C** are true and accurate copies of these policies.

21. CSC conducted a mandatory all-hands meeting at D'Arcy Road on February 14, 2023, to train employees on these new policies and conducted two additional mandatory all-hands meetings on March 1, 2023 and March 8, 2023, at the company's two other locations. Attached as **Exhibit D** are true and accurate copies of the training presentation materials and the sign-in sheets from the trainings.

22. On February 20, 2023, Ms. Privitera and I met with Mr. Nelson to follow up on his February 3, 2023 complaint. As set forth in my summary of that meeting, I asked him if he had any further concerns. Mr. Nelson was very appreciative of our efforts and liked the new policies. He told us that he felt things were better, and specifically thanked us for addressing all of his concerns. Attached as **Exhibit E** is a true and accurate copy of my summary of that February 20, 2023 meeting.

23. Mr. Nelson did not complain about race-based harassment again.

24. I once again met with Mr. Nelson on February 27, 2023, along with Mr. Faulkner from the Union. Mr. Nelson had found a shotgun shell under the seat in the rear cab of the service truck he had been assigned for the day. Mr. Nelson asserted that the shotgun shell had been placed there to intimidate him, and he did not feel safe. As described in my summary of this meeting, I explained that the driver who had just used and returned the truck would not have known that Mr. Nelson would be driving it next. I also explained that, if someone was actually trying to threaten him, they would not have left the shell under the seat in the back of the truck where it might never be found. Attached as **Exhibit F** is a true and accurate copy of a photograph showing the shotgun shell under the back seat. I also explained to Mr. Nelson that the former salesman who regularly drove that truck would frequently use a shotgun for skeet shooting. Before our new Weapon-Free Workplace Policy was implemented, this employee would in fact keep his shells and clay pigeons under the back seat of the truck. Mr. Faulkner then told Mr. Nelson that my explanation was reasonable and noted that CSC had taken all of his concerns to date seriously and addressed them. He asked Mr. Nelson "what more are you looking for?" Mr. Nelson emphasized that he did not feel safe, and asked Mr. Faulkner to place him in an apprentice position with a different company. Attached as **Exhibit G** is a true and accurate copy of the notes that I prepared of this February 27, 2023 meeting.

25. Mr. Nelson did not tell us that he felt this incident had anything to with race-based harassment.

26. I tried to call Mr. Nelson the evening of February 27, 2023, but he did not answer. I then emailed him. Attached as **Exhibit H** is a true and accurate copy of the email I sent to Mr. Nelson.

27. The following day, on February 28, 2023, Mr. Nelson did not come to work. He resigned via email to me at 9:38 p.m. that evening. Attached as **Exhibit I** is a true and accurate copy of Mr. Nelson's resignation email.

28. Mr. Nelson's assertion that CSC terminated his employment is false.

29. I have reviewed the Position Statement being submitted by CSC in this matter and all of the facts asserted in the Position Statement as they relate to me are true and accurate to the best of my knowledge, information, and belief.

I solemnly affirm, under the penalties of perjury and upon personal knowledge, that the contents of this document are true.

Executed on April 14, 2023

Rickey McGuire

# EXHIBITS TO R. MCGUIRE DECLARATION

# EXHIBIT A

# ANTI-DISCRIMINATION/HARASSMENT POLICIES

The Company is dedicated to providing equal opportunity for employment or advancement to qualified applicants or employees and to providing employees with a work environment devoid of harassment and discrimination. This section provides an overview of company policies. There are many states that have their own laws or requirements, which may differ from this Handbook. The EEO Officer will provide or post the necessary information on the appropriate bulletin board.

The Company is committed to the practice and philosophy of employing personnel based upon their training, experience and overall qualifications. There will be no discrimination by management, supervisors or employees against an applicant or an employee because of race, religion, color, sex, national origin, age, disability, marital status or veterans status.

It is the responsibility of all employees to make an effort in achieving the equal employment opportunity/affirmative action goals of the Company.

## Equal Employment Opportunity

It is Company policy to observe and comply with federal, state and local laws regulations regarding equal employment opportunity.

Further, it is Company policy to take affirmative action to hire employees without regard to race, religion, color, sex, national origin, age, disability, marital status or veterans status or any other basis that is protected by state, federal and local law in regard to any position for which an applicant or employee is qualified.

The Company will act without discrimination in regard to the above in all employment practices, such as advertising; recruitment; testing; screening; hiring; selection for training, including apprenticeship; promotion; demotion; termination; transfer; pay rate; other forms of compensation, including retirement; or overtime. Employees will be judged solely by their qualifications for the particular job and will receive equal treatment after employment. None of the Company's facilities are to be segregated, classified, or limited in any way that would adversely offset the status of an employee.

In accordance with federal regulations, the Company will make every good faith effort to fulfill obligations not only for minorities but also for women. The Company will also establish specific affirmative action programs and standards for women in construction.

Handicapped workers will not be discriminated against because of their handicaps. The Company understands that according to federal regulations, a handicap is "any impairment which substantially limits one or more of the person's major life activities". In addition to recruiting, hiring and other conditions of employment, the Company will take affirmative action in training and in modifying job requirements and facilities for the physically or mentally handicapped to comply with these regulations whenever reasonable.

The Company will take appropriate steps to ensure that all employees are advised of our non-discrimination policy and of our interest in actively and affirmatively providing equal employment, through notices on bulletin boards, notices to unions, notices in offices and field offices, publications and work with industry groups.

Our Company cooperates fully with the construction trade unions in the development of programs, including apprenticeship, to assure qualified minority persons, women, handicapped persons, disabled veterans or veterans of the Vietnam Era of equal opportunity for employment in the construction trades and that all of the above conditions are met.

In addition to our Company's policy, as a member of the Specialized Carriers and Rigging Association we support the efforts of the community and labor.

We will not retaliate against anyone who has opposed employment practices that may be illegal under the law or because he or she has testified or participated in any proceedings under the law.

Management will continue to be guided and motivated by this policy and with the cooperation of all employees, will actively pursue the goal of equal employment opportunity throughout the Company.

## Violence and Threats of Violence in the Work Place

It is the policy of the Company to strive to maintain a work environment free from intimidation, threats, or violent acts. This includes but is not limited to, intimidating, threatening or hostile behaviors, physical abuse, vandalism, arson, sabotage, use of weapons, carrying weapons of any kind onto Company property, or any other act, which, in management's opinion is inappropriate for the workplace. In addition, jokes or offensive comments regarding violent events will not be tolerated.

Employees who feel they have been subjected to, or witnessed, any of the behaviors listed above should immediately notify their respective supervisor or, in the absence of the supervisor, the EEO officer. Complaints will be investigated and disciplinary action taken, as necessary. In the case of an immediate threat to safety of the employee, or

others, they have the authority to contact law enforcement officials without first informing management.

The Company reserves the right to conduct searches and inspections of employees' personal effects, including, but not limited to, lunch pails, boxes, thermoses, purses, packages, or vehicles; or Company provided materials including, but not limited to, lockers, desks, personal computer files, cabinets, or file drawers, without notice. A minimum of two members of the management team and the employee should be present during any search. The Company must have a duplicate key for any furniture or equipment the employee may lock.

Any illegal and unauthorized articles discovered may be taken into custody and may be turned over to law enforcement representatives.

Any Company employee who refuses to submit to a search or who is found in possession of prohibited articles will be subject to disciplinary action up to and including termination.

## Harassment and Intimidation

The Company is committed to providing a work environment that is free of harassment in any form. In keeping with this commitment, we will not tolerate harassment of Company employees by anyone, including any supervisor, co-worker, vendor, client or customer of the Company.

Harassment consists of unwelcome conduct, whether verbal, physical, or visual, that is based upon a person's protected status, such as sex, color, race, religion, national origin, age, medical condition, disability, marital status, veteran status, citizenship status, or other protected group status. The Company will not tolerate harassing conduct that affects tangible job benefits, that interferes unreasonably with an individual's work performance, or that creates an intimidating, hostile, or offensive working environment.

Sexual harassment deserves special mention. Unwelcome sexual advances, requests for sexual favors, and other physical, verbal, or visual conduct based on sex constitute sexual harassment whether explicit or implicit. Sexual harassment may include explicit sexual propositions, sexual innuendo, suggestive comments, sexually oriented kidding or teasing, practical jokes, jokes about gender-specific traits, foul or obscene language or gestures, display of foul or obscene printed or visual material, and physical contact such as patting, pinching, or brushing against another's body. Sexual harassment does not mean an occasional compliment of a socially acceptable nature. A complaint of sexual harassment does not have to come from the individual the comment or activity was directed towards but may come from an observer or anyone else who found the activity to be harassing/offensive in nature. The following guidelines set the general definition of sexual harassment.

- ❖ When sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature are unwelcome or are made a condition of employment.
- ❖ When submission to or rejection of such conduct is the basis for employment decisions affecting the employee.
- ❖ When such conduct creates an intimidating, hostile or offensive working environment.

All Company employees are responsible to help assure that we avoid harassment. If you feel that you have experienced or witnessed harassment, you are to notify your supervisor or, when the supervisor is not available, the EEO officer immediately. Retaliation against anyone for reporting sexual harassment, assisting in making a sexual harassment complaint, or cooperating in a sexual harassment investigation will result in disciplinary action up to and including termination.

The Company's policy is to investigate all such complaints thoroughly and promptly. A written report should be made of any complaint and subsequent inquiry. To the fullest extent practical, the Company will keep complaints and the terms of their resolution confidential. If an investigation confirms that harassment has occurred, the Company will take corrective action, including such discipline, up to and including immediate termination of employment, as is appropriate.

## Bulletin Boards

The Company provides bulletin boards in areas of employee access to post State and Federal employment posters, Company policies, Company activities and changes to policies and procedures. No other materials may be posted without the permission of management.

Each employee is expected to check the bulletin board periodically for information regarding Company activities.

# EXHIBIT B





# EXHIBIT C

Crane Service Company
ESTABLISHED 1926

9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.322.6200 FAX 301.322.6207

## Anti-Harassment Policy

Crane Service Company, Inc. (the "Company" or "CSC") is committed to providing a work environment free of harassment. We will not tolerate harassment of Company employees by anyone, including any supervisor, co-worker, vendor, client, or customer of the Company. This includes any hate speech regarding a person's race, religion, color, gender, sexual orientation, national origin, age, disability, marital status, or veteran status.

**Prohibited Conduct**
Harassment consists of unwelcome conduct, whether verbal, physical, or visual, that is based upon a person's protected status, such as sex, color, race, religion, national origin, age, medical condition, disability, marital status, veteran status, citizenship status, or another protected group status. The Company will not tolerate harassing conduct that affects tangible job benefits, interferes unreasonably with an individual's work performance, or creates an intimidating, hostile, or offensive working environment.

**Sexual Harassment**
Unwelcome sexual advances, requests for sexual favors, and other physical, verbal, or visual conduct based on sex constitute sexual harassment, whether explicit or implicit. Sexual harassment may include explicit sexual propositions, sexual innuendo, suggestive comments, sexually-oriented kidding or teasing, practical jokes, jokes about gender-specific traits, foul or obscene language or gestures, display of foul or obscene printed or visual material, and physical contact such as patting, pinching or brushing against another's body. Sexual harassment does not mean an occasional compliment of a socially acceptable nature. A complaint of sexual harassment does not have to come from the individual the comment or activity was directed towards but may come from an observer or anyone else who found the activity to be harassing/offensive in nature. The following guidelines set the general definition of sexual harassment.

- When sexual advances or requests for sexual favors or other verbal or physical conduct of a sexual nature are unwelcome or are made a condition of employment.
- When submission to or rejection of such conduct is the basis for employment decisions affecting the employee.
- When such conduct creates an intimidating, hostile, or offensive working environment.

It is unlawful for males to sexually harass females or other males and for females to sexually harass males or other females. Sexual harassment on the job is unlawful whether it involves coworker harassment, harassment by a manager, or harassment by persons doing business with or for the Company.

**Employee Responsibility**
Everyone at CSC can help assure that our workplace is free from prohibited discrimination and harassment. Everyone is expected to avoid any behavior or conduct that could reasonably be interpreted as harassment; no employees are exempt from the requirements of this policy. Every employee is expected to inform any person in the workplace whose conduct the employee finds unwelcome. Any manager or supervisor who is aware of conduct inconsistent with this policy or who receives a report of conduct inconsistent with this policy being directed towards another employee or an individual they supervise is to act and report the conduct immediately to Human Resources or Safety Manager at 301-333-6200.

**Investigation Procedures**
The Company's policy is to investigate all such complaints thoroughly and promptly. A written report should be made of any complaint and subsequent inquiry. To the fullest extent practical, the Company will keep complaints and the terms of their resolution confidential. If an investigation confirms that harassment has occurred, the Company will take corrective action, including such discipline, up to and including immediate termination of employment, as is appropriate.

**Policy Against Retaliation**
Retaliation against anyone for reporting sexual harassment, assisting in making a sexual harassment complaint, or cooperating in a sexual harassment investigation will result in disciplinary action up to and including termination.

Crane Service Company
ESTABLISHED 1926

9210 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.5200 FAX 301.333.5209

## RECEIPT ACKNOWLEDGEMENT

## EMPLOYER'S COPY

This is to acknowledge that I have received and have carefully read the Crane Service Company, Inc. Anti-Harassment policy. I further agree that I may request that my supervisor explains to me any rules that I do not understand. In the event my supervisor is unable to explain these policies to my satisfaction, I acknowledge that I must contact the Human Resources Department or Safety Manager for clarification. I understand that any violation of the Company's rules and regulations can make me subject to immediate discharge and forfeiture of all privileges and benefits. I understand that I am to, and will, abide by all amended and additional rules and regulations that may be given to me in writing and/or notices that appear on the employee bulletin board from time to time.

I acknowledge receipt and retention of a copy of this signed statement and the Crane Serve Company, Inc. Anti-Harassment policy.

Employee's Signature: ______________________________ Date: ____________________

Print Full Name: ______________________________ PC#: ____________________

Supervisor's Signature: ______________________________ Date: ____________________

Witness Signature: ______________________________ Date: ____________________

Please complete and return to Supervisor.

Crane Service Company
ESTABLISHED 1926
9316 D'Arcy Road, Upper Marlboro, MD 20774 301.333.6200 301.333.6207

## Weapon-Free Workplace Policy

### Purpose

To ensure that Crane Service Company ("Company") maintains a workplace safe and free of violence for all employees, the Company prohibits the unauthorized possession of firearms, explosives, or any other dangerous weapons on Company premises or while conducting Company duties.

### Covered Individuals

All Crane Service workers are subject to this policy, including contract workers and temporary employees, as well as visitors and customers on company property. A license to carry a weapon does not supersede this company policy. Any employee violating this policy will be subject to disciplinary action, up to and including termination.

### Definitions

"Company property" is defined as all company-owned or leased buildings, equipment, and surrounding areas, such as sidewalks, walkways, driveways, and yards, under the Company's ownership or control. This policy applies to all company-owned or leased vehicles and all vehicles that come onto company property.

"Dangerous weapons" include firearms, explosives, knives, and other weapons considered dangerous or could cause harm. Employees are responsible for ensuring that any item possessed by the employee is not prohibited by this policy.

### Searches of Personal Property

Crane Service reserves the right at any time and at its discretion to search all company-owned or leased vehicles, containers, briefcases, purses, packages, and people entering the property, as well as lockers, desks, and other areas for the purpose of determining whether any weapon is being or has been, brought onto the property or premises in violation of this policy. Employees who fail or refuse to promptly permit a search under this policy will be subject to discipline up to and including termination.

### Enforcement

This policy is administered and enforced by the Human resources (HR) department/ Safety department. Anyone with questions or concerns about this policy should contact Rickey McGuire at 301-333-6200.

Crane Service Company
ESTABLISHED 1926

9210 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6297

**RECEIPT ACKNOWLEDGEMENT**

**EMPLOYER'S COPY**

This is to acknowledge that I have received and have carefully read the Crane Service Company, Inc. Weapons policy. I further agree that I may request that my supervisor explains to me any rules that I do not understand. In the event my supervisor is unable to explain these policies to my satisfaction, I acknowledge that I must contact the Human Resources Department or Safety Manager for clarification. I understand that any violation of the Company's rules and regulations can make me subject to immediate discharge and forfeiture of all privileges and benefits. I understand that I am to, and will, abide by all amended and additional rules and regulations that may be given to me in writing and/or notices that appear on the employee bulletin board from time to time.

I acknowledge receipt and retention of a copy of this signed statement and the Crane Serve Company, Inc. Weapon policy.

Employee's Signature: ______________________________ Date: ____________________

Print Full Name: ______________________________ PC#: ____________________

Supervisor's Signature: ______________________________ Date: ____________________

Witness Signature: ______________________________ Date: ____________________

Please complete and return to Supervisor.

# EXHIBIT D




# Crane Service Company Inc.

## Workplace, Respect & Awareness
## Stand-down Meeting
## February 14, 2023

Crane Service Company
ESTABLISHED 1926
9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

***Crane Service Company ("Crane Service" or "Company") is committed to providing a safe working environment.***

<u>Two key policies to be addressed today</u>:

I. Weapons Policy

II. Anti-Harassment Policy

Crane Service Company
ESTABLISHED 1926

9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

# I. WEAPONS POLICY

# Crane Service is committed to providing a safe working environment.

***To ensure that Crane Service maintains a workplace safe and free of violence for all employees, the Company prohibits the unauthorized possession of firearms, explosives, or any other dangerous weapons on Company premises or while conducting Company duties.***

**Who is covered under this policy?**

All Crane Service workers are subject to this policy, including contract workers and temporary employees, as well as visitors and customers on company property. A license to carry a weapon does not supersede this company policy. Any employee violating this policy will be subject to disciplinary action, up to and including termination.

# Crane Service is committed to providing a safe working environment.

***Workplace violence is a growing nationwide problem necessitating a firm, considered response by employers. The cost of workplace violence are great, both in human and financial terms. We believe that the safety and security of Crane Service employees is paramount.***

**What are the definitions of workplace violence?**

Threats or acts of physical or aggressive contact directed toward another individual, including jokes or offensive comments regarding violent events, will not be tolerated. Threats or acts of physical harm directed toward an individual or his or her family, friends, associates or property. The intentional destruction or threat of destruction of Company-property or another employee's property. Harassing or threatening phone calls, surveillance, or stalking of another employee. Veiled threats of physical harm or similar intimidation. Also, any conduct resulting in a conviction under any criminal code provision relating to violence or threats of violence that adversely affects the Company's legitimate business interests.

**Crane Service is committed to providing a safe working environment.**

**What is Company property?**

Company property is defined as all company-owned or leased buildings, equipment, and surrounding areas, such as sidewalks, walkways, driveways, and yards under the Company's ownership or control. This policy applies to all Company-owned or leased vehicles and all vehicles that come into Company property.

**What is considered a dangerous weapon?**

Firearms, explosives, knives, and other weapons considered dangerous or could cause harm. Employees are responsible for ensuring that any item possessed by the employee is not prohibited by this policy.

# Crane Service is committed to providing a safe working environment.

**How will enforcement be handled?**

Anyone engaged in threatening or violent action on Crane Service property may be removed from the premises. They will remain off-premises pending the outcome of the investigation of the incident. When threats are made or acts of violence are committed by Crane Service employee(s), a judgment will be made by the Company as to what actions are appropriate, including possible medical evaluation and/or possible disciplinary action up to and including termination. Under this policy, decisions may be needed to prevent a threat from being carried out, a violent act from occurring, or a life-threatening situation from developing. No existing policy or procedure of the Company should be interpreted in a manner that prevents the making of these necessary decisions.

**What should I do if I am threatened?**

If you feel you have been subjected to or witnessed any of these behaviors we discussed, you should immediately notify your supervisor. If they are not available, call the HR manager or Safety Manager. Complaints will be investigated, and disciplinary action will be taken as necessary. In case of an immediate threat to the safety of the employee, or others, law enforcement will be called in.

## Crane Service is committed to providing a safe working environment.

**Can someone be searched who is suspected of carrying a dangerous weapon?**

Crane Service reserves the right at any time and at its discretion to search all company-owned or leased vehicles, containers, briefcases, purses, packages, and people entering the property, as well as lockers, desks, and other areas to determine whether any weapon is being or has been, brought onto the property or premises in violation of the policy.

Employees who fail or refuse to promptly permit a search under this policy will be subject to discipline up to and including termination.

**Who is enforcing this policy?**

This policy is administered and enforced by the HR department and the Safety department. If anyone has any questions or concerns, please contact me (Rickey 202-669-8809).

Crane Service Company
ESTABLISHED 1926
9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

# II. ANTI-HARASSMENT POLICY

**Crane Service is committed to providing a work environment free of Harassment.**

## What is Harassment?

Harassment consists of unwelcome conduct, whether verbal, physical, or visual, that is based upon a person's protected status, such as sex, color, race, religion, national origin, age, medical condition, disability, marital status, veteran status, citizenship status, or any other protected group status.

## What is Sexual Harassment?

Unwelcome sexual advances, requests for sexual favors, and any other physical, verbal, or visual conduct based on sex constitute sexual harassment, whether explicit or implicit.



# CSC is committed to providing a work environment free of Harassment.

**What is the Company's position?**

Crane Service will not tolerate any type of harassment of Company employees by anyone, including the supervisor, co-worker, vendor, client, or customer of the Company. CSC will not tolerate harassing conduct that affects tangible job benefits, interferes unreasonably with an individual's work performance, or creates an intimidating, hostile, or offensive working environment. Any individual breaking this policy is subject to disciplinary action up to and including termination.

**What are the Employee's Responsibilities?**

Employees must avoid any behavior or conduct that could reasonably be interpreted as harassment. If someone says something to you that you find offensive, let them know. If Managers, supervisors, or lead men witness any of this conduct, they must stop it immediately. If an employee comes to you to report any type of harassment, you need to immediately inform HR or Safety Manager to investigate the incident.

**Crane Service is committed to providing a work environment free of Harassment.**

## What happens once a complaint is reported?

Crane Service policy is to investigate all such complaints thoroughly and promptly. To the fullest extent practical, the Company will keep complaints and terms of their resolutions confidential. If the investigation confirms harassment occurred, we will take corrective action, including such discipline, up to and including immediate termination of employment.

## Do I have to worry about retaliation?

Crane Service will not tolerate any form of retaliation against any employee for reporting, assisting in making harassment complaint, or cooperating in the investigation of a complaint. Anyone found to be retaliating will be disciplined up to and including termination.

# Crane Service Meeting 02/14/2023

| Employee: | |
|---|---|
| Baldwin, Dutch | [signature] |
| Baldwin, John | [signature] |
| Barbour, Terry | [signature] |
| Barto, Chris | [signature] |
| Belotte, Todd | |
| Boykin, Isaiah | |
| Bradley, Jordan | [signature] |
| Brown, Andre | |
| Bustillo, Leo | |
| Cammack, Joe | [signature] |
| Cannon, Brad | [signature] |
| Cariette, Devante | |
| Crown, Kirk | |
| Delgado, Danny | [signature] |
| Dillon, Chris | [signature] |
| Gauger, Eric | [signature] |
| Gilliam, Andre | [signature] |
| Glista, Andy | [signature] |
| Granshaw, Steve | |
| Gray, Billy | [signature] |
| Hill, Billy | [signature] |
| Hood, J.D. | [signature] |
| Jenkins, Rob | |
| Kaiser, Alex | [signature] |
| Kane, ED | [signature] |
| Katushonak, Kiryl | [signature] |
| Lemmon, John | |
| Lemmon, Matt | [signature] |
| Loveless, Kory | [signature] |
| Marc Hunter | |
| Marsden, Doug | |
| Marshall, Travis | |
| May, Trent | [signature] |
| Mccombs, Stan | [signature] |
| McLaughlin, Arbi | |
| McLung, Matt | |
| ERVIN D. ELLISON | [signature] |
| Schaffer, Derek | [signature] |
| mcblathln, otis | [signature] |

| | |
|---|---|
| Miles, Josh | |
| Morris, C.B. | |
| Mutispaugh, John | |
| Nelson, Carl | |
| Patterson, Lavelle | |
| Rice, Mark | |
| Rosenberger, Dustin | |
| Rosso, Andrew | |
| Rutledge, Garrett | |
| Sager, Larry | |
| Saravia, Oscar | |
| Serrano, Oscar | |
| Sherman, Cody | |
| Smith, Chris | |
| Snyder, Patrick | |
| Sorrels, Steve | |
| Spittel, Jesse | |
| Tevis, Keith | |
| Thompson, Kevin | |
| Thorness, Chris | |
| Torres, Edgar | |
| Tyler Yates | |
| Vaughan, Nate | |
| Velasquez, Nef | |
| Volkov, Sergei | |
| White, Tony | |
| Yukhnevich, Max | |

Shawn Rice

Matt Thornton

Terry Barbour

Tony Lutz

Mario

Adam Leach

Pat Yopp

Cliff Mid

Kirk Hubbell

BRANDON K. HORNE

Sonny Andrews

Connie DeHart

3/1/23

| Name Printed | Signature |
| --- | --- |
| Michael Howard | [signature] |
| John Lemmon | [signature] |
| Oran McLaughlin | [signature] |
| Ronnie Gruber | [signature] |
| Charles Atkins | [signature] |
| Catherine Guevara-Gonzalez | [signature] |
| Ana Margarita Rodriguez | [signature] |
| Brian Mazzell | [signature] |
| Mason Rhodes | [signature] |
| MARC Hunter | [signature] |
| Douglas Marsden | [signature] |
| Edgardo L. Torres-Rivera | [signature] |
| Chris Hearner | [signature] |
| Julio Gonzalez | [signature] |
| Mike Russo | [signature] |
| Victor Sosa | [signature] |
| Sonny Andrews | [signature] |
| Steven Granshaw | [signature] |
| Leonel Bustillo | [signature] |
| Isaiah Boykin | [signature] |
| Kevin Thompson | [signature] |
| Andre Brown | [signature] |
| Eduardo Molina | [signature] |
| Derrick Lewis Jr. | [signature] |
| Mike Blair | [signature] |

| Name | Signature |
| --- | --- |
| Alaris Loveless | [signature] |
| Karla Osuna | [signature] |
| Rob Jenkins | [signature] |

# Weapons & Anti-Harrassment Meeting 03/08/2023

| Number | Full Name (Printed) | Signature |
|---|---|---|
| 01 | Marcus Davis | [signature] |
| 02 | Luke K. Miles | [signature] |
| 03 | Charles Ramey | [signature] |
| 04 | Derrick Lewis | [signature] |
| 05 | Darwin Proctor | [signature] |
| 06 | Mark Wilkerson | [signature] |
| 07 | Dan Goucher | [signature] |
| 08 | Tracy Decuar | [signature] |
| 09 | Chris Trujillo | [signature] |
| 10 | J.D. Costello | [signature] |
| 11 | Samuel Aguas | [signature] |
| 12 | Douglas Valle | [signature] |
| 13 | [illegible] | [signature] |
| 14 | Tim Krantz | [signature] |
| 15 | Tony Ante | [signature] |
| 16 | Kenneth Long Jr | [signature] |
| 17 | Chris Hendricks | [signature] |
| 18 | Edgardo P. Lozano | [signature] |
| 19 | Scott Saltsgaver | [signature] |

| | | |
|---|---|---|
| 20 | Hank Waugh [signature] | |
| 21 | Justin Sullivan | |
| 22 | Herbert marshalleck [signature] | |
| 23 | Tommy Ball | |
| 24 | GEORGE SECKMAN | |
| 25 | Scott McIntosh | |
| 26 | Tim PIRRONE | |
| 27 | Romeo Pineda | |
| 28 | MARK ARHAR | |
| 29 | David Champiney | |
| 30 | Matt McClung | |
| 31 | Josh Miller | |
| 32 | Juan S. Hernandez | |
| 33 | Douglas oak | |
| 34 | Anthony Alvarez | |
| 35 | Anthony Griffith | |
| 36 | Jose Alvarez | |
| 37 | Chris Boyce | |
| 38 | LEO GORDON | |
| 39 | Ishmael Sesay | |
| 40 | Rigo Castillo | |
| 41 | Bryan Glascoe | |

| | | |
|---|---|---|
| 42 | John Ciriello | [signature] |
| 43 | Paul Crouse | [signature] |
| 44 | James Solkowski | [signature] |
| 45 | Shaun Jamison | [signature] |
| 46 | Tony J McGuire | [signature] |
| 47 | Jonathan Fish | [signature] |
| 48 | Josiah Unger | [signature] |
| 49 | Ryan Walker | [signature] |
| 50 | Brad Thiessing | [signature] |
| 51 | Pancho Cruz | [signature] |
| 52 | | |
| 53 | | |
| 54 | | |
| 55 | | |
| 56 | | |
| 57 | | |
| 58 | | |
| 59 | | |
| 60 | | |
| 61 | | |
| 62 | | |
| 63 | | |

# EXHIBIT E

Crane Service Company
ESTABLISHED 1926

9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

Meeting with Carl Nelson and Alyssa Privitera 02/20/2023

Had follow up meeting with Carl regarding the matters that he brought up on February 3, 2023. I asked Carl if he had any further problems or concerns. He told me that he really appreciated the way we handled the situation and our quick response to his concerns. He felt things were better all around. He liked the new policies and the way they were presented. I instructed Carl, that in the future, if he had any problems or concerns to come to me first. I am the one to address any of these types of issues. I told him if I do not take care of the problem, then you should go to the union representative on the issue. He told me he understood and he would come to me in the future. He thanked me again for addressing all his concerns.

Rickey McGuire
Safety Manager

# EXHIBIT F



# EXHIBIT G

Crane Service Company
ESTABLISHED 1926

9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

Summary of events for meeting with Carl Nelson on 02/27/2023

I was forwarded an email from Brian Mazzella, which was an email from Steve Faulkner, regarding an email and picture Carl Nelson sent Steve. We immediately contacted Steve and asked him to attend a meeting that I was going to hold with Carl Nelson. At 2:00 pm, they both arrived and we sat down to discuss his concerns.

I first went over how Carl disregarded my instructions from last week about contacting myself first if he had any concerns at Crane Service. Steve also interjected how he should talk to the employer with any employment concerns because that is company business and not union business. Carl feels he should talk to the union whenever there is any problems period. Steve instructed him that the union could not set policy or change business practices. Carl was not happy with these responses.

I then asked Carl about the email and photograph he sent to Steve. Carl said he was instructed by dispatch to take ST-18 to LC3 in Ashburn Virginia to assist John Lemmon on CR-1386. He had to wait a few minutes for another employee to come in and hand him the keys. At this point, the other employee had no idea who was taking this truck out. Carl then went out to the truck and opened the door to put tools he needed in the back seat. He said he noticed a shotgun shell casing in the floor in the back. He said he felt the shell was placed there as an intimidation tack tick.

I listened to Carl's concerns and then had him go over when he saw the shell. He told me that he opened the back door and lifted the seat to put the tools inside and there it was. I told him that if someone were trying to intimidate you they would not have placed the shell in the back under the seat. There is a good chance you would never even go in the back seat of the truck. I also explained how the shell was probably left in the truck by the former salesman who drove that truck. He is an avid outdoorsman and shot clay pigeons on the weekends. Prior to the new weapons policy, he would keep his shells and pigeons under the back seat of the truck.

Carl wanted to continue to argue over this being an intimidation tack tick and not accidently left in the truck. At this time Steve stepped in and told Carl that my explanation was reasonable for the shell casing. He also informed Carl that Crane Service has taken your concerns seriously and addressed your issues, created new policies, and had a stand down to go over the policies as a group. What more are you looking for. Carl then told Steve that he does not feel safe and wants Steve to place him in another apprentice position somewhere else. Steve informed Carl that he would go back to the school and asked them to place him back on the list for next available position. He also told Carl that if he does not feel safe then he has to make a decision whether he wants to continue working for Crane Service.

I then asked Carl to take some time this evening and think about what we discussed. I again went over the situation that morning and the explanations. I tried to reassure him he was reading something into this that was not there.

I called Carl at 5:49 pm to ask if he had given everything some thought. He did not answer so I left him a message to call me back. I followed this call up with the attached email explaining about how the shell casing did not break the new weapons policy. I also reminded him that he was to report to D'Arcy at

Crane Service Company
ESTABLISHED 1926
9310 D'Arcy Road, Upper Marlboro, MD 20774 TEL 301.333.6200 FAX 301.333.6209

7:30 am for his assignments. Failure to appear would mean we assume he no longer works for Crane Service.

Rickey McGuire
Safety Manager

# EXHIBIT H

Gmail

Rickey McGuire <rmcguire@craneserviceco.com>

## Meeting follow up

1 message

**Rickey McGuire** <rmcguire@craneserviceco.com> Mon, Feb 27, 2023 at 6:44 PM
To: Carl Nelson <carlnelson411@gmail.com>
Bcc: brianm@craneserviceco.com, lynnp@craneserviceco.com

I just left you a voicemail message to follow up on our earlier conversation. After our discussion, I reviewed our weapons policy, and ammunition by itself is not a weapon nor an explosive, so there is no policy violation. My understanding is that Dispatch expects you to arrive by 7:30 am at D'Arcy Road tomorrow for your assignment. Otherwise, if you choose not to show up, then we will assume that you will no longer be employed with Crane Service Company.

Sincerely,
Rickey McGuire

Sent from my iPhone

# EXHIBIT I

Gmail

Rickey McGuire <rmcguire@craneserviceco.com>

## Meeting follow up

4 messages

**Rickey McGuire** <rmcguire@craneserviceco.com> Mon, Feb 27, 2023 at 6:44 PM
To: Carl Nelson <carlnelson411@gmail.com>
Bcc: brianm@craneserviceco.com, lynnp@craneserviceco.com

I just left you a voicemail message to follow up on our earlier conversation. After our discussion, I reviewed our weapons policy, and ammunition by itself is not a weapon nor an explosive, so there is no policy violation. My understanding is that Dispatch expects you to arrive by 7:30 am at D'Arcy Road tomorrow for your assignment. Otherwise, if you choose not to show up, then we will assume that you will no longer be employed with Crane Service Company.

Sincerely,
Rickey McGuire

Sent from my iPhone

---

**Carl Nelson** <carlnelson411@gmail.com> Tue, Feb 28, 2023 at 9:38 PM
To: Rickey McGuire <rmcguire@craneserviceco.com>
Cc: Berry Gilroy <jatc77@gmail.com>, Steve Faulkner <steve@iuoelocal77.com>

To whom it may concern,

I'm turning in my letter of resignation/quitting the job with Crane Service because of intolerable work conditions and or treatment.

Carl
[Quoted text hidden]

---

**Rickey McGuire** <rmcguire@craneserviceco.com> Wed, Mar 1, 2023 at 7:21 AM
To: Brian Mazzella <brianm@craneserviceco.com>, "RickMazzellaCSC@gmail.com" <RickMazzellaCSC@gmail.com>, Lynn Perry <lynnp@craneserviceco.com>, Barbara Mazzella <barbaram@craneserviceco.com>

Sent from my iPhone

Begin forwarded message:

> **From:** Carl Nelson <carlnelson411@gmail.com>
> **Date:** February 28, 2023 at 9:39:08 PM EST
> **To:** Rickey McGuire <rmcguire@craneserviceco.com>
> **Cc:** Berry Gilroy <jatc77@gmail.com>, Steve Faulkner <steve@iuoelocal77.com>
> **Subject: Re: Meeting follow up**
>
> [Quoted text hidden]

---

**Rickey McGuire** <rmcguire@craneserviceco.com> Wed, Mar 1, 2023 at 11:41 AM
Draft

Rick McGuire

Safety Manager
Crane Services Company, Inc.
cell-202-669-8809
office-301-333-6200 ext. 104



[Quoted text hidden]