**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CARL NELSON,<br><br>Plaintiff,<br><br>v.<br><br>CRANE SERVICE CO., INC.,<br><br>Defendant. | Case No. 8:24-cv-00766-ABA |

**CRANE SERVICE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Jake B. Mitchell (Bar No. 30736)
Michael S. McNamara (*Pro Hac Vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8000
(202) 663-8007 (facsimile)
jake.mitchell@pillsburylaw.com
michael.mcnamara@pillsburylaw.com
*Attorneys for Defendant Crane Service Co., Inc.*

## I. INTRODUCTION

Plaintiff Carl Nelson's Opposition (the "Opposition" or "Opp.") to Defendant Crane Service's summary judgment motion (the "Motion") does not dispute that promptly after Mr. Nelson's first written complaint of discrimination, Crane Service thoroughly investigated his allegations, and while the investigation did not corroborate them, Crane Service imposed remedial measures and there was no objective evidence of race discrimination after that. Under *EEOC v. Xerxes Corp.*, 639 F.3d 658 (4th Cir. 2011), the company is not liable for discrimination under these circumstances.[1]

While Mr. Nelson by chance discovered a shotgun shell three weeks later while cleaning under the back seat of a company pickup truck, there was no objective evidence of racial animus associated with that – no messages (racial or otherwise) and no objective evidence suggesting that the shell was intended for Mr. Nelson. Mr. Nelson's subjective belief that the shell was racially motivated does not create an issue of fact to survive summary judgment. Mr. Nelson cannot distinguish *Irani v. Palmetto Health*, 767 F. App'x 399, 414, 416 (4th Cir. 2019) and *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 529–30 (D. Md. 2015), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016). Mr. Nelson offers no evidence to connect the allegedly hostile act of leaving a shotgun shell underneath the seat of a truck with race. The Court should accordingly grant summary judgment to Crane Service.

Mr. Nelson attempts to avoid summary judgment by pointing the Court to supposedly contemporaneous "notes" that he wrote about his discrimination allegations during a three-month period, starting when he went to work at Crane Service. But those "notes" – which are really

---

[1] Capitalized terms used herein have the meaning ascribed in Defendant's Memorandum of Law (ECF No. 80-1).

purpose-built-for-litigation – cannot defeat summary judgment for three reasons. First, they only describe alleged discrimination during the period preceding his January 31, 2023 written complaint; they do not describe any discriminatory conduct after Crane Service's subsequent investigation and remedial measures, so they do not defeat summary judgment under the *Xerxes* standard. Second, they are inadmissible hearsay and the Court cannot consider them. Mr. Nelson does not argue that any exception to the hearsay rule applies. Third, Mr. Nelson did not timely disclose them in discovery. Mr. Nelson's initial disclosures made no reference to the notes that are referenced in the Opposition. For that matter, Mr. Nelson did not disclose the notes or the allegations contained within it when the union representative pressed him for further detail about his race discrimination allegations on February 1, 2023. He did not disclose them when Crane Service asked Mr. Nelson for specifics about his claims during the resulting thorough investigation. More importantly, Nelson did not disclose the notes in his Rule 26(a)(1) initial disclosures. And he did not disclose them in response to Crane Service's interrogatory asking for all facts supporting his claims. Under Federal Rule of Civil Procedure 37(c)(1), Mr. Nelson cannot use those notes to defeat summary judgment.

Finally, Crane Service is entitled to summary judgment on all of Mr. Nelson's counts other than constructive discharge because the undisputed facts show that Mr. Nelson resigned from Crane Service. Mr. Nelson argues inconsistent positions with respect to the purported "adverse action": On the one hand, he argues that he was constructively discharged (which necessarily means he resigned); but on the other hand, he argues that Crane Service retaliated against him with an adverse employment action (that is, he argues that Crane Service fired him). Crane Service argued in its moving papers that Mr. Nelson cannot show that Crane Service took adverse action against him. Mr. Nelson's Opposition cites a form that Crane Service put in the mail to Mr. Nelson

on February 28 saying that his employment had ended, but that form clarifies that the reason was a "Voluntary Quit." And it is undisputed that he then sent an email resigning on February 28 before he knew that the Crane Service notice was in the mail and on its way to him. In sum, it is undisputed that Mr. Nelson resigned and was not otherwise subject to adverse action, so Crane Service is entitled to summary judgment on his discrimination and retaliation claims.

For the reasons stated in Crane Service's Motion and herein, and because the arguments raised in the Opposition are not factually or legally supported, all of Mr. Nelson's claims must fail.

## II. ARGUMENT

### A. The Undisputed Facts Show that Crane Service Met the Standard Required by *EEOC v. Xerxes* When It Promptly Investigated Mr. Nelson's Allegations and Imposed Appropriate Remedial Measures – and No Race Discrimination Followed.

#### 1. Mr. Nelson concedes that Crane Service promptly investigated his allegations and imposed appropriate remedial measures.

It is undisputed that Crane Service promptly investigated Mr. Nelson's allegations of race discrimination after he made them in writing. It is also undisputed that Crane Service then instituted a firearms policy and updated its anti-discrimination policy, and that no race discrimination happened after that. Mr. Nelson does not even strike a glancing blow at the facts set forth in Paragraphs 24-31 of Crane Service's Statement of Undisputed Material Fact.

Despite Mr. Nelson's own admissions and the additional undisputed facts showing Crane Service's thorough and exhaustive response to Mr. Nelon's written complaint, Mr. Nelson argues that Crane Service is nonetheless liable because "no employee of Defendant was disciplined." Opp., at 20 n.3. The law does not require that an employee be disciplined to constitute sufficient remedial measures. "The standard 'in no way requires an employer to dispense with fair procedures for those accused or to discharge every alleged harasser. And a good faith investigation

of alleged harassment may satisfy the…standard, even if the investigation turns up no evidence of harassment.'" *Xerxes*, 639 F.3d at 674-675, (alteration in original) (quoting *Harris v. L&L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir. 1997)). That is precisely the case here. None of Mr. Nelson's vague allegations were corroborated by the thorough investigation undertaken by Crane Service. (SUMF ¶22.) Indeed, Mr. Nelson submitted evidence in the Opposition that "During [its] exhaustive investigation, [Crane Service was] unable to corroborate [Mr. Nelson's] allegations that he was called any slurs or names or was being targeted in any way." (Dkt. 82-1 ¶ 18).

"As an initial premise, we note that 'an employer *cannot* be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists' under its reasonable procedures." *Xerxes*, 639 F.3d at 674, (quoting *Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006)). "Thus, 'employee[s] claiming harassment by a coworker bear significant responsibility in notifying the employer.'" *Id*. at 674, (alteration in original) (quoting *Howard*, at 570). In this vein, it is worth adding that when Crane Service launched its investigation into Mr. Nelson's allegations, Mr. Nelson did not share his allegedly contemporaneous notes or the detail contained within them. "So long as the employer's response to **each known incident** of coworker harassment is reasonably prompt, and the employer takes remedial measures that are reasonably calculated to end the harassment, liability may not be imputed to the employer as a matter of law." *Xerxes*, 639 F.3d at 675 (emphasis added).

As set forth in Crane Service's motion, after Mr. Nelson made a vague and generalized race discrimination complaint to the union representative, Steve Faulker, Mr. Faulkner replied on February 2, 2023, in part, "It makes it difficult to investigate your complaint without information about who said and did the things you are claiming, and when." (Dkt. 80-8 at 3.) Mr. Nelson replied: "I don't know their names only their ethnicity and racial discrimination. . . ." (Dkt. 81-

10.) Mr. Nelson also refused to divulge details to Crane Service during its investigation: "Despite repeated requests, however, Mr. Nelson would not identify the employees about whom he was making allegations." (Dkt. 82-1, ¶ 12.)[2]

It is undisputed that Crane Service completed its thorough investigation and imposed remedial measures in the form of (a) creating a firearms policy; (b) holding an all hands meeting to roll out that firearms policy and update the pre-existing anti-discrimination policy; and (c) requiring all employees to sign a document acknowledging that they were bound by the anti-discrimination policy. (SUMF ¶¶ 17-31.) Mr. Nelson's opposition introduced additional documents establishing these undisputed facts. (Dkt. 82-1, pp. 19-44.) It is also undisputed that Mr. Nelson was satisfied with Crane Service's response and that discrimination did not continue. (SUMF ¶¶ 29-30.) Mr. Nelson's opposition introduces more detail in support of this. On February 20, 2023, three weeks after Mr. Nelson's written complaint, Crane Service supervisors met with him. Mr. Nelson reported that "He felt things were better all around. He liked the new policies and the way they were presented . . . He thanked me again for addressing all his concerns." (Dkt. 82-1 at 46.)

"The cessation of 'harassment shows effectiveness, which in turn evidences such reasonable calculation.'" *Xerxes*, 639 F.3d at 669 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Circ. 1998)). "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law." *Id.* at 670 (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 411-412 n.8 (3d Cir. 1997)).

---

[2] Mr. Nelson did not raise his allegedly contemporaneous notes, which include the details he refused to provide to both Mr. Faulker and Crane Service during their investigations.

Based on the undisputed facts and these authorities, the Court should dismiss Mr. Nelson's claims.

**2. Mr. Nelson offers no evidence of race discrimination after Crane Service imposed those remedial measures.**

The only event that Mr. Nelson complained about after Crane Service investigated his allegations and imposed remedial measures was his incidental discovery of a shotgun shell while cleaning underneath the seat of a pickup truck. Notably, Mr. Nelson does not dispute any of the facts set forth in Crane Service's moving papers establishing the chance nature of his discovery of the shotgun shell. In fact, Mr. Nelson even adds a portion of his deposition transcript in which he testified that this statement was true: "If [Mr. Nelson] had never lifted the seat, [Mr. Nelson] would have never seen the shotgun shell." (Dkt. 81-5 at 24.)

Mr. Nelson's entire Opposition turns on his stated *subjective* belief – which is really just speculation – that an unidentified person must have left the shotgun shell under that seat because of Mr. Nelson's race. But he admitted that he has no idea who put the shotgun shell underneath the seat. (Dkt. 81-5 at 37.) Mr. Nelson cites no *objective* evidence to support his *subjective* belief.

Binding precedent requires more. Mr. Nelson must introduce evidence that the hostile environment he faced was "based on" or "because of" his race. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 530 (D. Md. 2015)("[Mr. Nelson's] status as the only African-American in her group does not permit a plausible inference that the unwelcome conduct . . . was *based on* her race"). The Fourth Circuit also employed this principle in *Irani v. Palmetto Health*, 767 F. App'x 399 (4th Circ. 2019). There, the court explained:

> In essence, Appellant's claim requires the inference that because Dr. Koon used racially insensitive language a couple of times during Appellant's residency, every encounter that he -- and, indeed, his []

> coworkers -- had with Appellant was infected by racial hostility. No evidence justifies that massive inferential leap.

*Id*. at 417.

Mr. Nelson asks this Court to take a similarly massive inferential leap. There is no evidence that the shotgun shell was left under the seat – which he discovered by chance later – *because of* Nelson's race. Mr. Nelson asks the Court to impermissibly infer that because he had allegedly encountered racial hostility more than a month earlier, when he stumbled on the shotgun shell, that must have been because of his race. No objective evidence supports that inference. The Court should accordingly grant summary judgment to Crane Service.

**B. Mr. Nelson's Purpose-Built-for-Litigation "Notes" Do Not Defeat Summary Judgment.**

**1. Mr. Nelson's allegedly contemporaneous notes do not describe any discrimination after Crane Service imposed remedial measures in response to Mr. Nelson's complaints.**

The portion of Mr. Nelson's allegedly contemporaneous notes that cover the period after he complained in writing to the union, and after Crane Service's subsequent investigation and response do not contain any evidence of discrimination. Therefore, even if Mr. Nelson's allegedly contemporaneous notes were admissible (they are not, as discussed below), they do not change the result from the *Xerxes* line of caselaw discussed above.

**2. Mr. Nelson's allegedly contemporaneous notes are inadmissible hearsay.**

Mr. Nelson's purpose-built-for-litigation notes are inadmissible hearsay anyway, so they cannot be considered. "[H]earsay statements…cannot support or defeat a motion for summary judgment." *Smith v. McGraw*, No. 10-CV-02310-AW, 2012 WL 603238, at *4 (D. Md. Feb. 23, 2012); *Greensboro Pro. Fire Fighters Ass'n*, *Local 3157 v. City of Greensboro,* 64 F.3d 962, 967 (4th Cir. 1995).

Courts routinely find that the type of self-authored personal journal like the one Mr. Nelson offers here is inadmissible hearsay. *See, e.g.*, *Clark v. City of Los Angeles*, 650 F.2d 1033, 1038 (9th Cir. 1981) (finding that the admission of Mr. Nelson's diary was reversible error because the diary "constitutes a written account of practically all of appellees' case against the appellants"; *Payan v. United Parcel Serv.*, 905 F.3d 1162 (10th Cir. 2018) (district court did not abuse its discretion in excluding plaintiff's handwritten notes as inadmissible hearsay); *Laymon v. Lobby House, Inc.*, No. C.A. No. 07-129-MPT, 2008 WL 1733354, at *5 (D. Del. Apr. 14, 2008) (plaintiff's diary was "pure hearsay"); *Reilly v. Revlon, Inc.*, No. 08 Civ. 205 (CM)(MHD), 2009 WL 2900252, at *2 (S.D.N.Y. Sept. 9, 2009) (excluding from evidence "[p]laintiff's time line/diary—a document prepared by plaintiff for litigation purposes.")

Mr. Nelson presents no evidence or argument to establish any exception to the hearsay rule. He could not successfully establish an exception even if he tried. Consider the likely candidates. Mr. Nelson has not established and cannot establish the "recorded recollection" exception of Federal Rule of Evidence 803(5) because he would need to show that the notes were "on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately." Fed. R. Evid. 803(5)(A). And even if he did that, the notes could only be received as an exhibit if offered by an adverse party. Fed. R. Evid. 803(5).

The notes also cannot be admitted as a present sense impression under Rule 803(1) because Mr. Nelson admitted in deposition that he wrote other notes on various other documents, and later transcribed them into the notes that are now Exhibit 2 (Dkt. 81-3) to the Opposition: "They were all on different papers, like, you know, whatever I had my – get my hand on at that moment. I had it on – I had notes on napkins. I had notes on the receipts. I had notes on different stuff. And what I did was I took the notes and wrote them in the actual pad." (Dkt. 81-5 at 10.) This exception

applies only to statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The rule requires that the statement be contemporaneous with an ongoing or just-completed event; the "crucial provision of this exception is immediacy." *United States v. Lentz*, 282 F. Supp. 2d 399, 410, 418 (E.D. Va. 2002), (excluding diary and journal entries because "no indication exist[ed] that such statements were immediately connected to [defendant] perceiving the actions described"), *aff'd*, 58 F. App'x 961 (4th Cir. 2003).

Again, the allegedly contemporaneous notes are inadmissible hearsay. Crane Service objects to them. And Mr. Nelson has not, and cannot, establish that any exception applies. So, the Court cannot consider them.

**3. Mr. Nelson's allegedly contemporaneous notes cannot be considered because he did not disclose them.**

After he filed this lawsuit, Mr. Nelson served his Federal Rule of Civil Procedure 26(a)(1) initial disclosures. (McNamara Reply Decl., Ex. A.) Mr. Nelson's initial disclosures made no reference to the notes that are referenced in the Opposition as exhibit 2 (Dkt. 81-3). (McNamara Reply Decl., Ex. A.)

Crane Service then served Mr. Nelson with an interrogatory asking him to "State with particularity all facts you content support or relate to your claims that you endured race discrimination, a hostile work environment, and retaliation during your employment at Crane Service." (Dkt. 81-4 at 2.) Mr. Nelson answered that interrogatory by referring back to the allegations in his Complaint and also alleging that Mr. Nelson had complained to another employee

on December 20, 2022. (*Id*. at 3.) Mr. Nelson's interrogatory answer[3] did not reference the facts set forth in his notes that are now Dkt. 81-3, and did not reference the notes themselves, either.

The Court should not consider this document now. "If a party fails to provide information…as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion," Fed. R. Civ. P. 37(c)(1).

**C. It is Undisputed That He Resigned From Crane Service so Mr. Nelson's Claims Based on His Allegation that He Was Fired Must Fail.**

It is undisputed that Mr. Nelson was not fired by Crane Service. (SUMF ¶46.) He resigned when he sent an email on February 28, 2023 saying, "I'm turning in my letter of resignation/quitting the job with [Crane Service]." (Dkt. 82-9.) Mr. Nelson suggests that Crane Service terminated him when it put into the mail a "Notice of Employee Separation" a few hours before Mr. Nelson sent that resignation email. (Dkt. 82-6.) But that notice actually reinforces the undisputed fact that Mr. Nelson resigned. But before addressing the form itself, consider some context. Mr. Nelson admitted in his deposition that he did not know that the Notice of Employee Separation was on its way to him when he sent his resignation email. (Dkt. 81-5 at 29-30.) And his deposition testimony makes clear that he wanted to resign earlier, but held off out of concern that he would harm his union status. (McNamara Reply Decl., Ex. B., Nelson Dep: 192:21 – 194:8 and 198:7 and 199:4.)

The Notice of Employee Separation clearly states that Mr. Nelson resigned. It is a form with a section called "Reason for Termination." Dkt. 82-6. That section, in turn, has two sub-

[3] Nelson's Opposition attaches his own interrogatory answers. (Dkt. 81-4 and Dkt. 82-15.) Crane Service objects to these documents on hearsay grounds. Their only relevance for this motion is Mr. Nelson's failure to disclose his allegedly contemporaneous notes in answer to Interrogatory No. 2. The Court cannot consider Mr. Nelson's answers for the truth of the matters asserted in them.

sections: Voluntary Quit and Involuntary Termination. Each subsection then has a number of boxes that can be checked to indicate more specifically why the employee either voluntarily quit or was involuntarily terminated. Crane Service checked the box next to "Voluntary Quit" and then added an explanation below: "Explanation / Events leading to separation: He did not appear for his job assignment on 2.28.23 at D'Arcy Road and he did not accept any phone calls from company representatives when he did not appear for work. Due to abandonment of his responsibilities, his actions constitute his 'resignation' from Crane Service." *Id*.

The context of the Notice of Employee Separation makes clear that the later timeline that Mr. Nelson cites (Ex. 23, Dkt. 82-8) which says "Carl Nelson is terminated (on February 28)" only means that Mr. Nelson's employment had ended; that timeline does not indicate whether Mr. Nelson had quit or was fired. That distinction between quitting or being fired is made in the Notice of Employee Separation – and clarifies that he quit.

Further, Mr. Nelson's authorities on this point are distinguishable. Mr. Nelson cites dictum from *Madock v. McHugh*, 2011 U.S. Dist. LEXIS 92392, at *72 (D. Md. 2011). The issue in *Madock* was whether reassignment of duties constituted constructive discharge. The more pertinent language from *Madock* is later in the same paragraph cited by Mr. Nelson: "a plaintiff may not resign and later claim he was actually discharged if he did not think at the time of his resignation that his termination was inevitable." *Id*. (quoting *Alba v. Merrill Lynch & Co*., 198 F. App'x 288, 293, n.3 (4th Cir. 2006). *McInerney v. United Air Lines, Inc*., 463 F. App'x 709, 721 (10th Cir. 2011) is also distinguishable because there – in contrast to here – the employee never expressed an intent to resign; she just failed to show up for work.

In sum, Mr. Nelson's opposing papers do not create a dispute of fact about this material issue: Whether Mr. Nelson quit or was fired.[4] It is undisputed that he voluntarily resigned. Accordingly, Mr. Nelson's claims based on his allegation that he was fired should all be dismissed. That includes all counts other than his constructive discharge claim (and that claim should be dismissed for the other reasons discussed herein).

## III. CONCLUSION

Mr. Nelson's purported "evidence" is insufficient to create a genuine dispute of material fact as to any of his claims, and Crane Service's motion for summary judgment should therefore be granted.

Dated: September 26, 2025

Respectfully submitted,

*/s/ Jake B. Mitchell*
Jake B. Mitchell (Bar No. 30736)
Michael S. McNamara (*Pro Hac Vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8000
(202) 663-8007 (facsimile)
jake.mitchell@pillsburylaw.com
michael.mcnamara@pillsburylaw.com
*Attorneys for Defendant Crane Service Co., Inc*

[4] Mr. Nelson's suggestion on Page 13 of his brief that Crane Service's summary judgment motion did not seek dismissal of all counts in his complaint simply cannot withstand scrutiny. Crane Service's introduction pointed out that the legal framework for all of Mr. Nelson's claims was the same – a proposition that Mr. Nelson does not dispute. And Crane Service then argued "Mr. Nelson's claims against Crane Service cannot survive summary judgment . . .." (Opposition at 1)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, I served a true and correct copy of the foregoing on all counsel of record via the Court's e-filing/PACER system:

*/s/ Jake B. Mitchell*
Jake B. Mitchell