# Exhibit B

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

```
- - - - - - - - - - - x
CARL NELSON,          :
        Plaintiff,    :
   v.                 : Case No. 8:24-cv-00766-ABA
CRANE SERVICE CO.,    :
INC.,                 :
        Defendant.    :
- - - - - - - - - - - x
```

CONTAINS CONFIDENTIAL INFORMATION

STIPULATED PROTECTIVE ORDER

DEPOSITION OF CARL NELSON

Held Remotely

Thursday, April 3, 2025

10:05 a.m. Eastern Standard Time

Job No. 579035

Pages: 1 - 247

Reported by: Janet A. Hamilton, RDR

A So I told him verbally that I will be doing a complaint, and then I went to the job site.

Q You drove -- which was in Ashburn, Virginia?

A Correct.

Q About an hour's drive away?

A About.

Q And you worked on that job site for a shift?

A For whatever task that I had to do, yeah. Once I completed the task, I left.

Q So why did you continue on with your work that day if you feared for your life?

A I'm sorry. I'm confused what you're implying.

Q Well, you said you feared for your life after you saw the shotgun shell. Why did you continue working?

A I complained.

Q I understand you complained, but then after you complained, you continued working. So

my question is, why did you continue working after you feared for your life?

A Sure. No worries. A union member cannot just quit a job. We can't just quit a job. We have to go through channels to get permission. Can't just -- that would have -- if I would have just quit, you know, sir, I would have been thrown out of the apprenticeship program, and I didn't want to risk my career. So I did it proper channels. I complained and stuff like that, was taking the proper channels.

Q What channels did you have to go through before you left?

A Well, first I complained, and then we had a meeting. And then they said that they was going to do an investigation, see if I can be transferred to another location, but Mr. Faulkner was letting them know that I can't just quit a job. He was letting Mr. McGuire understand that that -- that I can't just quit. I have to actually do a written resignation and I got to get approval from them because it's about the

circumstances of your resignation -- your resignation.

So you can't just quit a job without any repercussions. You have to get permission or it has to be -- how can I put it? I guess the A-okay to do so by Faulkner as well as Berry Gilroy.

Q Did you tell Mr. Faulkner that you wanted to be transferred to a different company?

A I asked them what was the options. He told me that I can't be transferred to a different company. That's not how it go. I might -- I told him for the most part that I just didn't feel safe there, you know, and, you know, he just told me I can't just quit.

That was the whole conversation. I can't just up and quit. I got to do a written thing. You know, but, I mean, he had to contact Berry to do that.

Q Berry?

A Yeah. Berry was the dispatcher for the Local 77 for the JATC, so he allowed Mr. McGuire to -- he told Mr. McGuire to go ahead and do his

conditions and/or treatment."

Do you see that?

MR. EILER: Yeah. Just to clarify, p.m., 9:38 p.m.

MR. McNAMARA: Yeah. I said that.

MR. EILER: Okay. Appreciate it.

Q Why did you send that e-mail?

A That's what he told me to do. You know, if -- if I didn't -- you know, if they wasn't going to do anything, you know, about it, he -- like, that was the -- that was what Mr. Faulkner wanted me to do.

He wanted me to wait to give them the opportunity to do an investigation about the February 27th shotgun shell, you know, and so that's really what I was waiting for.

But, again, I received it -- not only I received -- when I noticed I received an e-mail, let alone a voice message from Mr. McGuire stating that I should be showing up at D'Arcy Road, it implicated that they didn't even care about my complaint.

So later on that night, you know, me talking to family, other folks, it was the proper thing to do because I didn't want to keep on dealing with the intolerable working condition.

Q So you quit?

A No. I didn't quit. I was forced. So that's the instruction. I was forced.

Q I see. So when you sent the e-mail at 9:38 p.m., it's your -- your position that you sent in your letter of resignation/quitting the job because you were forced to do so?

A Correct. They were forcing me to come back to a -- that I felt as though that was a dangerous environment. Of course.

Q Okay. And because it was -- because your only option was to work in what you considered to be a dangerous environment, you chose to quit instead?

A I believe any reasonable person, sir, would do so.

Q Is that a yes?

MR. EILER: Objection. Asked and

CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC

I, Janet A. Hamilton, Registered Diplomate Reporter and Notary Public before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me stenographically and thereafter reduced to typewriting under my direction; that review was not requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of April, 2025.

Janet A. Hamilton

Registered Diplomate Reporter
My commission expires
February 4, 2028